[Carling v. Wilson.]

# Carling *v*. Wilson.

*Ejectment.*

(Decided January 30, 1912. Rehearing denied May 1, 1912. 58 South. 417.)

1. *Deeds; Description; Sufficiency.*—The description in the deed here involved is held insufficient and uncertain, and therefore the deed wholly void.

2. *Same; More or Less.*—The words "more or less" when used in a deed ordinarily mean "about."

APPEAL from Elmore Circuit Court.

Heard before Hon. W. W. PEARSON.

Ejectment by Albert F. Wilson against T. J. Carling, as trustee. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The deed from Holt to Wilson, of September 30, 1908, is as follows: After the usual granting clause, stating considerations, etc., the description is as follows: "The following described lands situated in Elmore county, state of Alabama, to wit: 25 acres, more or less, in fractional sections 21 and 22, township 19, range 18, Elmore county, Alabama, on the west side of Coosa river, bounded on the south as follows: By Cohn & Goldberg; on the north, by lands owned by the state of Alabama; on the west by the undersigned, the west line to be established by survey; bounded on the east by the Coosa river." After usual covenants, it is provided that the express condition of this conveyance is that said Wilson has the option to pay or not to pay the deferred payment of $50 an acre, for the 25 acres more or less; but, should he not pay the same on or before October 21, 1909, then and in that event all of the right, title, interest, and estate in said lands hereby

conveyed shall revert back to and become vested in the undersigned, and the said Wilson thereafter has no right, title, interest, or estate, legal or otherwise, to the same.

FRANK W. LULL, and J. M. HOLLEY, for appellant. No brief reached the Reporter.

THETFORD & MCKENZIE, B. K. MCMORRIS, and W. A. GUNTER, for appellee. No brief reached the Reporter.

McCLELLAN, J.—Statutory ejectment by Wilson, appellee, against Carling, appellant. The plaintiff's right to recover, as appears from this record, depends upon the efficacy, as a conveyance, of the instrument purporting to have been executed, on September 30, 1908, by T. R. and M. H. Holt, to Albert F. Wilson. The report of the appeal will contain a copy of that instrument.

It appears, with certainty, from the evidence, that the Holts owned a large area of land in fractional sections 16, 21, and 22, of township 19 N., range 18 E., on the west and south (in section 16) sides of the Coosa river. It was the evident purpose of the Holts to convey to Wilson *a part* of this area. The court is of the opinion that the purpose was not effected by the instrument of September 30, 1908, for the reason that no valid description of the real estate to be conveyed was made therein. In short, the instrument is void on account of a wholly insufficient, uncertain description of the real estate intended to be conveyed. Accordingly, the affirmative charge, requested by the defendant, was erroneously refused.

In the first place, if it be assumed that exactly 25 acres was intended to be conveyed, and also that the

[Carling v. Wilson.]

call for state-owned land was to be found in the south line of section 16, the instrument entirely fails to define the *west* line of the area, and, so omitting, likewise is wholly silent as to the shape in which the *25 acres* should lie. Indeed, accepting the assumptions stated, it is clear that an almost indefinite number of 25-acre areas, of as many different formations, could be laid off, touching each of three boundaries so assumed to be fixed by the instrument, and still, in each instance, conform to the every requirement of the description of the instrument. For instance, if the width of the strip at the north end (along the sixteenth section's south line) assigned by the plaintiff as the correct north boundary, was approximately doubled, and the apex of the inverted triangle of the 25-acre area rested on the land of Cohn & Goldberg at the south, the boundaries *plaintiff* finds fixed in the instrument would be adhered to.

Appeal is made by counsel for appellee for the application of the principle applied in *Wilkinson v. Roper,* 74 Ala. 140, 148, where it was held that a deed describing "10 acres off the northwest corner of said quarter section" conveyed "a square, and bounded by four equal sides," and in *Green v. Jordan,* 83 Ala. 220, 224, 3 South. 513, 514 (3 Am. St. Rep. 711), where it was held that an exception of "2 acres in the southeast corner" of a governmental subdivision meant a square of that area, bounded by equal sides, and in *Gaston v. Weir,* 84 Ala. 193, 195, 4 South. 258, where it was held that description of "47¼ acres of the west part of the north half of the northwest fourth of section 1" effected to convey a parallelogram containing that area. The like doctrine was adverted to in *Louisville & Nashville Railroad Co. v. Boykin,* 76 Ala. 560, 565.

The doctrine of these decisions cannot be availed of with respect to the instrument under consideration. In them the *shape* of the definite area was indicated by the instruments there involved. They referred, and were referred, to bases of *straight* lines, thereby affording data for accurate ascertainment of the particularly undefined lines. Here the Coosa river connects (upon the assumptions stated) the north and south lines. As appears, the river boundary is not *straight*. It is tortuous; and this is true, whether the thread of the stream, the crest of the west bank thereof, or the low-water mark therein, is taken as the particular basis of the eastern boundary.

Perhaps it is not necessary to say that in so determining we do not ignore this factor, clearly effective in *Wilkinson v. Roper, supra,* in the pertinent particular, viz: It was pronounced that the parties did not contemplate that the figure of the area should be "fanciful, capricious, or unique." That observation was peculiarly apt where the lines given were *straight* and those to be ascertained must have been straight, to the end that *squares* and *parallelograms* might be marked out to circumscribe the definite area intended to be conveyed or reserved. Here the east boundary, viz., the Coosa river, plainly forestalled any possibility of the carving out of a *symmetrical figure,* such as a *parallelogram,* extending westward from the "Coosa river." Its tortuous course, obviously, forbade and forbids the marking out upon the land of any figure of symmetrical form.

Again, the evidence leaves no room for doubt that no state-owned land lay *north* of the area plaintiff insists was described in the instrument. And it is equally certain that Holt himself owned that part of the sixteenth section lying north of the area plaintiff contends was conveyed by the instrument. In such state

of evidence, no presumption, arising from the fact (if judicial knowledge that the state originally held title to all sixteenth sections for school purposes can be taken), could avail to give verity and effect to the language of the instrument asserting *state-owned* lands to be the north boundary of the area intended to be conveyed. It is by no means certain that the reference to state-owned land was to such title land *outside* of fractional sections 21 and 22; for the other boundaries given, viz., the Coosa river, the lands of Cohn & Goldberg, and those of Holt, are all *in* fractional sections 21 and 22. If the state had owned lands *in* fractional sections 21 and 22, touching the Coosa river on the west, obviously that would have limited the *north* boundary to a line clear of the south line of fractional section 16 west of the Coosa river. The presumption alluded to being unavailing under the evidence before us, we think that to fix the south line of section 16 as the *north* boundary of the area plaintiff claims to have been conveyed to him could be an arbitrary act only—a process that cannot be sanctioned.

Furthermore, the instrument, treating the consideration to be (conditionally) paid, refers to this area as "25 acres." In the description of the property it stipulates "25 acres *more or less.*" And in setting down particularly the condition of payment, it defines a vitally important element thereof as the payment of "$50 an acre for *the* 25 acres *more or less.*" The west line being subject "to be established by survey," it is evident that there was no intention to fix in the instrument an exact definite area of 25 acres. The words *more or less*, ordinarily, mean *about.*—*Hurt v. Freeman,* 63 Ala. 335. For this reason, also, cases like *Hayes v. Martin,* 144 Ala. 532, 40 South. 204; *Wilkinson v. Roper, supra, Green v. Jordan, supra,* and *Gas-*

*ton v. Weir, supra,* where exact, definite areas were specified cannot be appealed to as authority in this instance, where the area is left so uncertain.

We have considered *Bromberg v. Yukers,* 108 Ala. 577, 580, 19 South. 49, 51, cited by appellee's counsel, as supporting the proposition that the description, in the instrument in hand, of "25 acres more or less * * * must be construed to mean 25 acres." All that is there ruled, as here pertinent, is that the words *more or less* "used in a deed of conveyance, * * * should be construed with reference to the particular circumstances under and in relation to which they are used." This does not, as appears, affirm the proposition to support which it is now cited. In order, in any case, to avail of the principle given effect, as before stated, in *Wilkinson v. Roper,* and the other decisions of that line to which we have referred, where metes and bounds are not fully given, a definite area must be fixed in the instrument. If not so fixed, that doctrine cannot be appealed to to save the instrument.

Other questions presented by the record and discussed in briefs are not considered. The affirmative charge was due the defendant. For its refusal, the judgment is reversed, and the cause is remanded.

Reversed and remanded. All the Justices concur.